[Civ. No. 49639. First Dist., Div. Two. Sept. 2, 1981.]

DEPARTMENT STORE EMPLOYEES UNION, LOCAL 1100, Plaintiff and Respondent, v. JOSEPH MAGNIN COMPANY, INC., Defendant and Appellant.

COUNSEL

Littler, Mendelson, Fastiff & Tichy, J. Richard Thesing and Kathleen M. Kelly for Defendant and Appellant.

Roland C. Davis, Nancy S. Roberts and Davis, Cowell & Bowe for Plaintiff and Respondent.

OPINION

**TAYLOR, P. J.**—Joseph Magnin Company, Inc. (Employer) appeals from an order granting the petition of the Department Store Employees Union, Local 1100 (Union) to confirm an arbitration award and denying the Employer's cross-petition. The Employer's major contention on appeal is that the arbitrator exceeded the scope of the submission and purported to resolve other issues subject to the primary jurisdiction of the National Labor Relations Board (NLRB). For the reasons set forth below, we have concluded that the order must be affirmed.

The pertinent facts are as follows: The Employer is a retail department store with headquarters in San Francisco and locations in several states. The five San Francisco locations are covered by a collective bargaining agreement (agreement) with the Union. Pursuant to the agreement, the Union is the sole collective bargaining agent for all employees at the Employer's San Francisco stores. The instant controversy involves employees of the store at Stockton and O'Farrell Streets in San Francisco (O'Farrell Street store).

In 1971, the Employer entered into an agreement with Gucci (an Italian manufacturer of leather goods and other articles) for the operation of a Gucci department at the O'Farrell Street store. In April 1978, the Employer and Gucci entered into a new arrangement provid-

ing for the maintenance of "existing locations" and the opening of "new locations." One of the new locations was to be a Gucci store at 253 Post Street, San Francisco (Post Street store).

In September 1978, an employee in the O'Farrell Street Gucci department requested permission to transfer to the proposed Post Street store. She was informed that to do so, she would have to resign and then be rehired with a new employment date. Thereafter, the Union requested that the Employer "fulfill all requirements of the contract" as to the proposed Post Street store. A board of adjustments meeting held in October, pursuant to the agreement, was inconclusive. The following day, another employee from the O'Farrell Street Gucci department tried to apply for a transfer to the Post Street store. She was informed that the Employer's policy did not permit transfers between stores and that she could apply for employment if she resigned her job. Again, the Union wrote to the Employer and requested arbitration of the matter of extending the agreement to the Post Street store, and expressed its concern about the Employer's denial of transfer rights of current employees.

On December 27, 1978, the Employer petitioned the NLRB for an election at the then newly opened Post Street store. On January 10, 1979, the Union filed an unfair labor practice charge with the NLRB and asserted that: 1) the Employer had violated the agreement by failing and refusing to allow employees in the Gucci department at O'Farrell Street to transfer in accordance with their seniority; 2) the Employer refused to proceed to arbitrate the transfer rights; and 3) the Employer's actions were calculated to deny employees their transfer rights under the agreement and to impair the selection of the Union as bargaining representative at the Post Street store.

Based on the Employer's refusal to arbitrate, the Union on January 9, 1979, filed the instant petition to compel arbitration and on January 25, 1979, obtained an order directing the Employer to proceed forthwith in the manner provided by the written collective bargaining agreement to arbitrate the transfer issue before an impartial arbitrator (Joseph Grodin).

Whenever unfair labor charges are pending, the NLRB will not proceed with an election and will defer proceeding on unfair labor charges pending arbitration (*Dubo Manufacturing Corporation* (1963) 142 N.L.R.B. 431). On January 26, 1979, Region 20 of the NLRB is-

sued a letter deferring the unfair labor charges until the decision in the instant arbitration.[1]

After 3 days of testimony from 10 witnesses, admission of more than 125 exhibits and review of written briefs, the arbitrator issued his opinion on July 16, 1979. On September 4, 1979, at the joint request of the parties, he issued an interpretation of the award. On September 20, 1979, the Union filed the instant petition to confirm the award; the Employer opposed and filed a cross-petition to correct and then confirm the award. On November 16, 1979, the court confirmed the award and denied the Employer's cross-petition to correct.

■ Since this controversy involves a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting interstate commerce, the instant action to confirm the arbitration award could have been filed in a federal court (29 U.S.C.A. § 185(a)).[2] Accordingly, although state court jurisdiction is conferred by Code of Civil Procedure sections 1285 and 1286, the state court must apply federal substantive law (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 436 [147 Cal.Rptr. 835]).

■ Recently, this court (Div. Four) defined our role as follows in *Safeway Stores, supra*, at pages 436-437: "The role of the court in re-

---

[1] By stipulation, the parties augmented the record on appeal to include the December 16, 1980, decision of the NLRB administrative law judge. On our motion, we have augmented the record to include the final NLRB decision and order of August 10, 1981. So far as pertinent, the NLRB affirmed the rulings, findings and conclusions of the administrative law judge and modified the remedy. The NLRB concluded that the Employer had violated sections 1 and 8(a)(3) of the National Labor Relations Act by prohibiting the transfer of hourly paid employees to its newly opened Post Street store from stores at which these employees were represented by the Union pursuant to the terms of a collective bargaining agreement. The NLRB order also requires Employer to transfer immediately to the Post Street store all employees who applied for transfer and were rejected because of their Union affiliation, as well as all employees who were discouraged from applying for transfer because of their Union affiliation, terminating employees presently employed at Post Street, if necessary, to provide jobs for the transferees. The order specifically declined to order Employer to apply the agreement and bargain with the Union in the Post Street store in the absence of a demonstration of majority support in that location.

[2] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

viewing the validity of an arbitration award under a collective bargaining agreement is an extremely narrow one. [Citations.] The findings of the arbitrator on questions of law as well as questions of fact are final and conclusive. Neither the merits of the controversy nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review.... [¶] The court may not substitute its judgment for that of the arbitrator. 'A court must affirm an arbitrator's award if it "can in any rational way be derived from the agreement," [citation] and can only reverse if "there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop."....'"

Preliminarily, we note that arbitrators have no obligation to the court to provide reasons for an award (*Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593, 598 [4 L.Ed.2d 1424, 1428, 80 S.Ct. 1358]). Here, the arbitrator provided more than 45 pages of findings of fact and the reasons supporting his conclusions. However, it is the award, rather than the specific reasoning employed, that we must review (*Lucas* v. *Philco-Ford Corporation* (E.D.Pa. 1975) 399 F.Supp. 1184, 1188).

The instant arbitration award provided that: 1) the employees in the Gucci department of the O'Farrell Street store may transfer to the Post Street store pursuant to the collective bargaining agreement between the parties; and 2) the Employer was to permit employees to transfer on the basis of seniority if they so desired. In the subsequent clarification, the arbitrator declared that those seeking to do so were entitled to transfer "forthwith" and did not have to wait for vacancies at Post Street.

In reaching his conclusions, the arbitrator framed the transfer issue into two related but analytically distinct questions. The first was whether employees generally have the contract right to transfer at their option from one store to another within the bargaining unit on the basis of seniority. The second and narrower one was whether the Employer violated the agreement by refusing to permit transfers. The first question implicitly assumed that the agreement applied to the Post Street store as part of the bargaining unit; the second, did not necessarily require the same assumption.

As to the first question, the arbitrator concluded that in the absence of express contract language controlling interstore transfers,[3] and a failure to show past practices of sufficient magnitude and regularity to establish a contractual obligation, the employees at the O'Farrell Street store had no general contractual right to transfer to Post Street. As to the second question, he concluded that there had been a violation of sections 1, 3A and 5B of the agreement, set forth below,[4] by the Employer's refusal to transfer the O'Farrell Street store employees. This conclusion on the second question was made independent of any assumption as to whether the Post Street store was, or was not, a part of the bargaining unit.

▮ Pursuant to the applicable NLRB principles, extension of an existing contract to a new facility is not permissible unless: 1) there is evidence that the Union represents a majority of employees at the new location; or 2) the new facility may be considered an "accretion" to the existing unit (*Melbet Jewelry-Orchard Park* (1969) 180 N.L.R.B. 107, 109; *Houston Div. of the Kroger Co.* (1975) 219 N.L.R.B. 388). Even if "accretion" is found, recognition is not required unless there is proof of majority status by a union. Thus, the affected employees are not denied their right to have a say in the selection of their bargaining representative.

Here, the arbitrator recognized that the Union's ability to demonstrate majority support at the new Post Street store or its ability to establish the new location as an accretion to the existing unit depended upon whether the Employer permitted O'Farrell Street employees to transfer to the new location. Thus, the potential recognition of the

---

[3]Section 19B of the collective bargaining agreement provided, so far as pertinent: "*When an employee is transferred from one department to another, he shall not lose, but shall retain all seniority rights....*" (Italics added.) The arbitrator found that no other provision of the contract, including the seniority sections, provided explicitly for transfers at the employee's request.

[4]Section 1 of the agreement provided, so far as pertinent: "The Union is recognized as the sole collective bargaining agent for *all employees* employed *at the San Francisco stores* of Joseph Magnin..."

Section 3A: "There shall be *no discrimination by the Employer* against any employee or applicant *on account of membership in* or activity on behalf of the *Union.*"

Section 5B: "*Any act of the Employer*, representative of the Union, or any employee *that is interfering with the faithful performance of this Agreement*, or a harmonious relationship between Employer and the Union, *may be referred to the Adjustment Board* for such action as the Adjustment Board deems proper, and *is permissive within this Agreement.*" (Italics added.)

Union at Post Street was to some extent subject to factors within the Employer's control. The issue was whether the Employer was free to limit transfers under circumstances in which such a limitation could frustrate the intent and purposes of the Employer's obligations to recognize the Union as the bargaining agent of all employees at the San Francisco stores. The arbitrator found that there was a strong inference that a motivating factor in the Employer's adoption of a no-transfer policy was a desire to "contain" the Union and restrict its influence in new stores. The no-transfer rule operated to preclude Union employees from transferring, in part, precisely because they were Union employees. Accordingly, the no-transfer rule discriminated against them "on account of membership in ... the Union" in violation of section 3A of the agreement quoted above at footnote 4. Further, the no-transfer rule violated section 5B by "interfering with the faithful performance of the agreement" by the Employer, as the rule operated to preclude or restrict lawful extension of the agreement to new locations and the rule also interfered with the harmonious relationship of the parties.

■   The Employer's major contention is that the arbitrator exceeded the scope of the submission. This contention is predicated on certain language in the Union's motion, which alleged that a dispute existed between the parties about the proper application of section 19 and certain other seniority provisions of the agreement.

The Union's motion to compel arbitration read, in pertinent part, as follows: "[W]hether the employees employed in the Gucci Department of Joseph Magnin's San Francisco department store had the right to transfer to the 'Gucci Shop' owned and operated by Joseph Magnin at 253 Post Street, San Francisco, *pursuant to, among other sections, Sections ... 19 ... of the collective bargaining agreement ...*" (italics added). The order directing arbitration used the identical language except that for the above phrase, it substituted: "*pursuant to the collective bargaining agreement between*" the parties. Neither the motion to compel arbitration nor the order directing arbitration limited the scope of the arbitration to an interpretation of only section 19 and "other seniority provisions" of the agreement. The record does not reveal that the Employer objected to the language of the order directing arbitration, either before the superior court or the arbitrator.

■   The Employer also maintains that: 1) the lawful extension of the agreement was an issue that properly could be resolved only by the NLRB, the agency with primary jurisdiction; and 2) violation of sec-

tions 3 and 5 of the bargaining agreement cannot be used to affect the rights of the Post Street employees who were not covered by the agreement.

As a decision based on general contractual rights to transfer required the assumption that the agreement applied to both locations, the arbitrator initially was required to determine whether lawfully the agreement would *not* apply to the Post Street store. If not, then he could not reach the question of a contractual right to transfer. Here, however, on the basis of the accretion principles and practices between these parties, the arbitrator concluded that the agreement applied to the new Post Street store. The arbitrator specifically acknowledged that whether or not the NLRB would find an "accretion" in light of his opinion or would determine the question independently, was a question that he was not called upon to resolve. He also noted that the NLRB would not defer to his judgment insofar as the issue is one of law and national labor policy.

Here, the arbitrator's determination of accretion and the application of the agreement to the Post Street store was only for the limited purpose of reaching a conclusion on the transfer issue. The arbitrator did not exceed his powers in determining a question which he was required to decide in order to resolve the controversy (*Safeway Stores Inc.,* v. *Brotherhood of Teamsters, supra,* 83 Cal.App.3d 430, 439). Since the issue of application of the agreement to the Post Street store is left to the NLRB, the arbitrator did not purport to make the ultimate determination of the the scope of the coverage of the agreement. The Employer's contention is, therefore, without merit.

Here, beyond the institutional interest in protecting its jurisdictional rights under section 1 of the agreement, the Union also had an interest in the unit employees who would be clearly and directly affected by the potential for diminished commissions as a result of competition from Post Street. The arbitrator's award was based on violations of the agreement, as applied to employees in the Gucci department at the O'Farrell Street store, a group clearly within the scope of section 1 of the agreement. The award provides a transfer right to those employees on request. The right is based on an existing agreement and accrued from the first moment that there was a violation of that agreement. After the initial violation the Employer hired other employees at the Post Street store which is not the responsibility of either the Union or the arbitrator. While the award has the potential effect of displacing

some of these Post Street employees, the award does not require the Employer to discharge them. Contrary to the Employer's contention, the award does not effect the rights of employees not covered by the agreement.

As the award is clearly based on principles of contract construction (*Ludwig Honold Mfg. Co. v. Fletcher* (3d Cir. 1969) 405 F.2d 1123, 1128; *C. P. Equipment Co. v. Intern. Ass'n of Machinists* (W.D.Pa. 1976) 415 F.Supp. 881, 882; *Safeway Stores, supra,* 83 Cal.App.3d 430, 437), and is rationally derived from the agreement between the parties (*Amalgamated Meat Cut. etc. v. Cross Bros. M. P. Inc.* (3d Cir. 1975) 518 F.2d 1113), it should be affirmed.

The order appealed from is affirmed.

Rouse, J., and Miller, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1981.