[No. A052194. First Dist., Div. Five. June 18, 1993.]

HEIDE V. BETZ, Plaintiff and Appellant, v.
CHARLES J. PANKOW, Defendant and Respondent.

**COUNSEL**

Margolin, Arguimbau & Battson, Ephraim Margolin, De Goff & Sherman and Victoria J. De Goff for Plaintiff and Appellant.

Elizabeth Bader, Stiller & Buxbaum and Moira Buxbaum as Amici Curiae on behalf of Plaintiff and Appellant.

Nossaman, Guthner, Knox & Elliott, Kurt W. Melchior and Claude M. Stern for Defendant and Respondent.

## Opinion

**HANING, J.**—Appellant Heide V. Betz appeals the denial of her petition to vacate an arbitration award in favor of respondent Charles J. Pankow. She contends the award by two male members of a three-person arbitration panel was improperly influenced by gender bias against her and in favor of respondent. We conclude the record supports the trial court's conclusion that appellant has not sustained her contention, and affirm.

### Facts and Procedural History

Appellant and respondent were the sole members of a partnership organized for the purpose of "ownership and operation of property." Their written partnership agreement provided that upon termination of the partnership, either partner could purchase the interest of the other at a price equal to the selling partner's "original contribution to the partnership." It further provided that any dispute arising thereunder would be resolved by arbitration under the auspices of the American Arbitration Association (AAA).

When the parties decided to dissolve the partnership but were unable to agree on the manner of dissolution, the dispute was submitted to a panel of three arbitrators selected by the AAA, consisting of two males and one female. After approximately 42 days of hearing, the male panelists rendered an award in favor of respondent. The female panelist neither signed the award nor issued a dissenting opinion. However, approximately one month after the award, she executed a declaration expressing her opinion that the male panelists engaged in a consideration of matters outside the record that "introduced elements of bias and unfairness going to the issues of contractual intent, undue influence, and appropriate relief." Based on this declaration appellant petitioned the trial court to vacate the award on numerous grounds, including gender bias. Respondent petitioned for confirmation. Following the filing of further declarations by all the arbitrators, the matter was argued and submitted to the trial court without a request for a statement of decision. The trial court denied appellant's petition to vacate, and confirmed the award, from which this appeal ensued.

### Discussion

Appellant's sole claim on appeal is her contention that the arbitration award was influenced by gender bias against her and in favor of respondent. Although appellant and amici curiae argue forcefully against gender bias, we emphasize that this appeal is not about whether gender bias is a valid ground for vacating the award. Respondent agrees that decisions biased by

discriminatory considerations of race, ethnicity or gender are not tolerated by the adjudicatory process, whether in the courts or in alternative forums for dispute resolution. Given the strong public policy against discrimination on the basis of race, ethnic origin, gender, etc. (see, e.g., Civ. Code, § 51 et seq.; Gov. Code, § 12920), appellant's right to a hearing free from such bias is not in dispute.[1] The issue here is whether appellant has demonstrated by this record that the trial court erred in refusing to vacate the award.

■ There is a presumption favoring the validity of the award, and appellant bears the burden of establishing her claim of invalidity. (*National Marble Co.* v. *Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1066 [229 Cal.Rptr. 653]; *Walter* v. *National Indem. Co.* (1970) 3 Cal.App.3d 630, 633 [83 Cal.Rptr. 803].)

The grounds for vacating an arbitration award are statutorily limited. Code of Civil Procedure section 1286.2 provides, in relevant part, that an award shall be vacated only if (a) it was procured by corruption, fraud or other undue means, (b) there was corruption in any of the arbitrators, or (c) the rights of a party were substantially prejudiced by misconduct of a neutral arbitrator. Since the arbitrators in this case were all selected by the AAA rather than the parties, all three are considered neutral.[2] The decision to confirm or vacate an arbitration award lies with the trial court. (Code Civ. Proc., §§ 1285-1287.6; see *City of Oakland* v. *United Public Employees* (1986) 179 Cal.App.3d 356, 363-364 [224 Cal.Rptr. 523].)

■ Our function as an appellate court is to review the trial court proceedings. In this regard, the applicable standards of appellate review of a judgment based on affidavits or declarations are the same as for a judgment following oral testimony: We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence. (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501 [289 P.2d 476, 47 A.L.R.2d 1349].)

Appellant contends the standard for disqualification of an arbitrator for bias is the same as that set forth for disqualification of judges in Code of Civil Procedure section 170.1, subdivision (a)(6)(C), which provides that a judge is disqualified if "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." The predecessor of this statute (Code Civ. Proc., former § 170, subd. (5)) has been

---

[1]The Chief Justice has also established a Judicial Council Advisory Committee to implement proposals for the elimination of gender bias in the courts.

[2]All further references to arbitrators are to neutral arbitrators. (See, e.g., *Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 858 [265 Cal.Rptr. 440].)

held to apply also to administrative hearing officers (*Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 793-794 [171 Cal.Rptr. 590, 623 P.2d 151]; *Gray* v. *City of Gustine* (1990) 224 Cal.App.3d 621, 632 [273 Cal.Rptr. 730]), but no reported decisions have held it applicable to arbitrators. Respondent relies on the "impression of possible bias" test established by case law for challenges of arbitration awards on grounds of bias resulting from conflicts of interest.

The California cases upon which respondent relies, and which discuss the standard for vacating arbitration awards on grounds of bias by a neutral arbitrator declare that the test is whether the record reveals facts which might create an impression of possible bias. (See, e.g., *Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 527 [265 Cal.Rptr. 868]; *Banwait* v. *Hernandez* (1988) 205 Cal.App.3d 823, 826-828 [252 Cal.Rptr. 647]; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087 [213 Cal.Rptr. 62]; *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 775 [166 Cal.Rptr. 774]; *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64 [148 Cal.Rptr. 282]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 371-372 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567 [104 Cal.Rptr. 733]; *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 841-843 [86 Cal.Rptr. 133].) This test is objective, requiring a reasonable impression. (*Banwait* v. *Hernandez, supra*, 205 Cal.App.3d 823, 829.) This standard was first applied in the *Johnston* case, which noted the virtually identical language of Code of Civil Procedure section 1286.2 and its federal counterpart in section 10 (9 U.S.C. § 10) of the United States Arbitration Act, and adopted the federal standard announced by the United States Supreme Court in *Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337].

In *Commonwealth*, an award was vacated after it was revealed that a neutral arbitrator in a construction dispute had an undisclosed ongoing business relationship with one of the parties, and had been retained as an engineering consultant for one of the construction projects involved in the dispute being arbitrated. The high court focused on the appearance of bias, concluding the existence of actual bias was unnecessary to its decision. It reasoned that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." (*Commonwealth Corp.* v. *Casualty Co., supra*, 393 U.S. at p. 150 [21 L.Ed.2d

at p. 305].) "We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (*Id.*, at p. 149 [21 L.Ed.2d at pp. 304-305].)

The majority opinion in *Commonwealth* was by six justices, among whom were Justices White and Marshall. Justice White also wrote a concurring opinion in which he was joined by Justice Marshall, and which stated that the court was not holding that arbitrators were held to the "standards of judicial decorum" of judges insofar as their professional relationships were concerned. "[A]rbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." (*Commonwealth Corp.* v. *Casualty Co., supra*, 393 U.S. at p. 150 [21 L.Ed.2d at p. 305].)

Justice White's concurring opinion in *Commonwealth* emphasizes that the court was considering claims involving the appearance of bias resulting from some relationship or connection between the challenged arbitrator and one of the parties which appeared to create a conflict of interest, and not with any actual bias or discrimination based on race, sex or other improper consideration. As Justice White explains, "[i]t is often because [arbitrators] are [persons] of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. . . . I see no reason automatically to disqualify the best informed and most capable potential arbitrators." (*Commonwealth Corp.* v. *Casualty Co., supra*, 393 U.S. at p. 150 [21 L.Ed.2d at p. 305.) This reasoning is understandable in light of the fact that most arbitrators are volunteers drawn from business and professional ranks, and are not full-time judicial officers with attendant public responsibilities. In order to attract and obtain the most capable among them, we cannot demand divestment of all interests or withdrawal from all activities prohibited to judicial officers.

It appears clear that the *Commonwealth* court was focused on conflicts of interest when it fashioned the impression of possible bias test. It cited the rules of the AAA which stated that "the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he [or she] believes might disqualify him [or her] as an impartial Arbitrator" (*Commonwealth Corp.* v. *Casualty Co., supra*, 393 U.S. at p. 149 [21 L.Ed.2d at pp. 304-305]), and the Canons of Judicial Ethics which provided, in canon 33 entitled, "Social Relations," that judges should " '. . . be particularly careful to avoid such action as may reasonably tend to awaken the suspicion that [their] social or business relations or friendships, constitute an element

in influencing [their] judicial conduct.'" (393 U.S. at pp. 149-150 [21 L.Ed.2d at pp. 304-305].) California cases applying the impression of possible bias test formulated in *Commonwealth* also involve circumstances in which the arbitrator's fairness or bias was challenged on the basis of an existing or prior business or professional relationship with one of the party's or the party's attorneys. (See, e.g., *Banwait* v. *Hernandez, supra,* 205 Cal.App.3d at p. 826, discussing "California law respecting the duty of an arbitrator to disclose conflicts of interest . . . .") None involved a claim of actual bias, gender bias or other form of arbitrary and impermissible discrimination.

■ It does not follow, however, from the fact that arbitrators enjoy greater freedom in their professional and personal associations that they have any license not accorded judicial officers to render decisions based on racial or gender bias. All litigants are entitled to a decision free from arbitrary considerations of race, gender, etc., and although arbitrators enjoy considerable latitude in the resolution of both factual and legal issues (*City of Oakland* v. *United Public Employees, supra,* 179 Cal.App.3d at p. 364; *Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-452 [157 Cal.Rptr. 167]), they are under the same duty as judicial officers to render decisions free from any influence or consideration of the race, ethnic origin or gender of the parties. As the *Commonwealth* court noted, "[W]e should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." (*Commonwealth Corp.* v. *Casualty Co., supra,* 393 U.S. at p. 149 [21 L.Ed.2d at pp. 304-305].)

■ Consequently, with regard to claims of racial, ethnic, religious or gender bias arbitrators should be held to the same standard pertaining to judicial officers—they should be disqualified if a person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial.

Under any standard, however, the burden of proof is on appellant as the party claiming bias to establish facts supporting her position. (*National Marble Co.* v. *Bricklayers & Allied Craftsmen, supra,* 184 Cal.App.3d at p. 1066.) Appellant contends the trial court applied its own standard, but the record does not substantiate her contention. The isolated remarks of the judge during the hearing, upon which appellant relies, do not indicate the court was unaware of its duty. To the contrary, when they are viewed in context, it is apparent that the trial court was well aware of its duty. In addition, by failing to request a statement of decision, appellant has waived the opportunity to create a proper record on this issue for review.

Regardless of the test applied, the determination is necessarily based on the evidence, which in this instance consists solely of a portion of the

declarations submitted by the arbitrators. ▇ Evidence Code section 703.5 limits the testimony of an arbitrator whose decision is being challenged on grounds of bias to that which addresses the charge of bias, partiality or improper conduct. The merits of the controversy, the manner in which evidence was weighed or the mental processes of the arbitrators in reaching their decision are not subject to judicial review. (*Cobler v. Stanley, Barber, Southard, Brown & Associates, supra,* 217 Cal.App.3d at p. 528; *Arco Alaska, Inc.* v. *Superior Court* (1985) 168 Cal.App.3d 139, 147-148 [214 Cal.Rptr. 51].) This rule is easier to recite than to apply, because these matters often overlap, leaving evidence that is admissible for one purpose, but not another.

The portions of the declarations upon which the parties rely are as follows:

1. In her initial declaration the female arbitrator states: "[D]uring the deliberations of the panel, I became aware that certain matters which were not presented as evidence in the proceedings were apparently being relied upon by members of the panel. That is, the [male] arbitrators who ultimately signed the award in this matter repeatedly articulated their belief that the relationship between the parties was based on a long-term sexual relationship between them. There was no evidence in the record of any such relationship. In my opinion, this introduced elements of bias and unfairness going to the issues of contractual intent, undue influence, and appropriate relief."

2. In her supplemental declaration, the female arbitrator states: "6. During the course of [the panel's deliberations], [the male arbitrators] made statements to the effect that the partnership at issue in these proceedings was formed and operated as part of a sexual relationship between the parties. Statements were made by both [male arbitrators] indicating that they reached this conclusion based on [appellant's] physical attractiveness, that she was younger than [respondent], that the parties traveled together and that [respondent] purchased jewelry for [appellant.] Statements were also made that during the course of dealing between the parties, [respondent] was influenced by his physical relationship with [appellant] and should therefore be excused from the effects of his conduct and certain written documents. Finally, statements were made that, as a result, [appellant] must have exercised undue influence over [respondent].

"7. To my knowledge, there was no evidence of any intimate relationship between the parties introduced in these proceedings at any time. Nor am I aware that there was ever any contention, argument or suggestion of counsel for either party that such a relationship ever existed."

3. The declarations of the male arbitrators state, respectively, the following:

a. "[The female arbitrator] refers to an articulation of '. . . a long-term sexual relationship. . . .' I did not use that term nor did I hear it articulated during conferences and deliberations. There was evidence introduced relating to the parties traveling together and to jewelry having been given by one to the other. We did discuss that evidence, but no one asserted that any sexual relationship had been proved, or, that if there were such a relationship, it mattered in any way."

b. "The only time that I have heard reference to a 'sexual relationship' between [respondent] and [appellant] is in the declaration of [the female arbitrator]. . . . [¶] As I recall, there was testimony that [respondent] and [appellant] traveled together to New York, London, Paris, Hong Kong, and Bangkok. There was testimony that [respondent] had given expensive jewelry to [appellant]. This evidence, as other evidence in the case, was discussed by the panel. It appeared that this might have been an attempt by the offering party to create an inference, by circumstantial evidence, that there was some relationship other than a typical business relationship between [appellant] and [respondent]. . . . [¶] The parties, from the outset of the arbitration, evidenced extreme anger at each other, repeatedly accusing the other party of lying, of fraud, and other misdeeds. There was frequent inflammatory language, bombastic interchanges between the attorneys, and persistent acrimony.[3] On one occasion, I wrote down a series of guidelines for the parties to govern their conduct for the remaining part of the arbitration. [¶] As I recall, there was also testimony that someone had left a dead rat in the seat of [respondent's] car which was parked at the partnership property, and that someone had urinated on the carpet in the partnership flat in London. There were frequent motions and requests by each party that the panel enjoin behavior of the other. . . ."

■ Appellant's claim of bias is premised entirely on her assertion that in arriving at their decision, the male arbitrators considered irrelevant and improper matter outside the record that reflects gender bias. This assertion is based on the declarations of the female arbitrator, and rests solely on the claim that the arbitrators had no valid reason for discussing such matters. However, the initial declaration of the female arbitrator is entirely conclusional; it fails to state sufficient facts to support appellant's charge. This opinion of the female arbitrator is also irrelevant, since the test is objective and judged by the perspective of the hypothetical reasonable person. (*Banwait* v. *Hernandez, supra,* 205 Cal.App.3d at p. 829; *United Farm Workers of*

---

[3]Neither party was represented at the arbitration by their counsel on appeal.

*America* v. *Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4].) This means that appellant must set forth *facts* sufficient to cause a reasonable person to entertain a reasonable doubt that the arbitrator would be able to be impartial. The female arbitrator's supplemental declaration similarly states that in arriving at their decision the male arbitrators discussed facts not in evidence, which demonstrated gender bias. However, with regard to the evidentiary state of the record, in paragraph 7 of her supplemental declaration she mentions only that to her knowledge "there was no evidence of any intimate relationship between the parties introduced in these proceedings at any time." Interestingly, the female arbitrator does not state that the award, or any of its facets, was in fact wrong or that she would have decided it any differently.

An argument can be made, as respondent suggests, that this declaration reveals nothing more than the reasoning processes of the arbitrators and, by virtue of Evidence Code section 703.5, is inadmissible to support appellant's challenge. (See *Cobler* v. *Stanley, Barber, Southard, Brown & Associates, supra,* 217 Cal.App.3d at pp. 527-529.) For example, the current or prior relationship between a witness and a party, or between the litigants, is relevant to explain motive or bias in their testimony, and is a proper matter for consideration. (See, e.g., 3 Witkin, Cal. Evidence (3d ed. 1986) §§ 1921, 1924, 1925.)

However, assuming that the supplemental declaration of the female arbitrator reveals facts which might, if uncontradicted or presented out of context, support appellant's charges of gender bias, the declarations from the remaining arbitrators reveal that proof of the parties' travels and gifts of jewelry was in fact in evidence, and offer a reasonable explanation of why such matters, and the parties' relationship, may have been discussed. The most obvious reason would be the necessity of distinguishing between partnership and personal assets. For example, if it were necessary to determine whether an expensive item of jewelry or any other asset was a gift or a partnership asset, the relationship between the parties and their intent at the time of acquisition would be relevant. With regard to the unidentified documents mentioned in the female arbitrator's declaration, to the extent any ambiguity or intent had to be determined by parol evidence, the relationship of the parties at the time of execution would be equally relevant. Common experience teaches that parties in a close familial or personal relationship frequently enter into agreements or collaborate in business and financial matters in ways uncommon among persons not so related.

The arbitrators are expected to discuss the evidence. Their observations of the parties and witnesses are employed for purposes of assessing bias,

motive and general credibility, and the possible inferences and conclusions to be drawn from the facts once they are found. The decisionmaking process encompasses the discussion or consideration of all possible alternatives. If there is any bona fide reason for consideration of past or present personal relationships between litigants or witnesses, the decisionmakers must be free to discuss them. Although inadmissible to support their reasoning or analytical processes, the declarations of the male arbitrators here may be considered in response to the gender bias charge, e.g., whether certain matters were discussed and whether the dispute warranted such discussions.

Based on this record, the absence of a statement of decision and the deference we must accord to the trial court's discretion to resolve disputed facts (*Griffith Co.* v. *San Diego Col. for Women, supra,* 45 Cal.2d 501; *City of Oakland* v. *United Public Employees, supra,* 179 Cal.App.3d at pp. 363-364), we see no error or basis for reversal.

We do not believe appellant has violated the standards established by *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], and respondent's request for sanctions is therefore denied.

King, Acting P. J., and Chesney, J.,* concurred.

A petition for a rehearing was denied July 1, 1993.

---

*Judge of the San Francisco Superior Court sitting under assignment by the Chairperson of the Judicial Council.