Filed 9/9/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| WALTER VAN BUSKIRK III,<br><br>   Plaintiff and Appellant,<br><br>      v.<br><br>ELLEN J. VAN BUSKIRK,<br>Individually and as Trustee,<br>etc., et al.,<br><br>   Defendants and Respondents. | B295648<br><br>(Los Angeles County<br>Super. Ct. No.<br>18STPB07724)<br><br>ORDER MODIFYING<br>OPINION AND<br>DENYING PETITION<br>FOR REHEARING<br><br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:

   IT IS ORDERED that the opinion in the above-entitled matter filed on August 14, 2020, be modified as follows:

   1. On page 2, in the first sentence of Section I, replace "now is 92" with "was 91 when she executed her declaration in this case";

2. On page 3, the following words from the fourth sentence of the last paragraph are deleted: "lived with and" and "in their family home";

3. On page 10, in the second sentence of the last paragraph, replace "owned and still owns" with "interests in";

4. On page 12, in the second sentence of the second paragraph, replace "own" with "hold interests in";

5. On page 15, in the fourth sentence of the first paragraph, replace "owned—and still owns—" with "continues to hold interests in".

The petitions for rehearing filed by Respondents Ellen J. Van Buskirk, Patricia Schlener, and Susan Howard are denied.

There is no change in the judgment.

_____

BIGELOW, P. J.          GRIMES, J.          WILEY, J.

Filed 8/14/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WALTER VAN BUSKIRK III, | B295648 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STPB07724) |
| v. | |
| ELLEN J. VAN BUSKIRK, Individually and as Trustee, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Paul T. Suzuki, Judge. Reversed and remanded.

RMO, Scott E. Rahn, Sean D. Muntz, Matthew F. Baker and David G. Greco for Plaintiff and Appellant.

Jeffer Mangels Butler & Mitchell, Mark Riera and Talya Goldfinger for Defendant and Respondent Ellen J. Van Buskirk.

Law Offices of Savin & Bursk, Bonnie Marie Bursk and Lindsay Lupe Savin for Defendants and Respondents Susan Howard and Patricia Schlener.

Gunderson Law Firm, Mark H. Gunderson and Catherine A. Reichenberg for Defendant and Respondent Charles Bluth.

—————————————

For want of personal jurisdiction, the trial court dismissed this family dispute over a trust. This was error, for the trust has ample connections to California, as do all family members who live elsewhere and who protest jurisdiction in California. We reverse and remand this matter.

## I

The central figure in this family dispute is respondent Ellen Van Buskirk, who now is 92. For simplicity and clarity, we refer to her as the mother.

The mother was married to Walter Van Buskirk, Jr., who died in 2005. The mother was a lifelong California resident; the couple had lived together in Santa Monica. Earlier in 2005, they created a revocable living trust called "The VAN BUSKIRK TRUST dated August 24, 2005" (Trust). They executed the Trust in Los Angeles County and chose California law as the governing law. After Walter Van Buskirk, Jr., died, the mother became the sole trustor.

The mother also is the trustee of the Trust. Before 2017, the Trust appointed the following people as successor trustees, should the mother be unwilling or unable to act as trustee:

- *Appellant Walter Van Buskirk III*, is the mother's son, and we refer to him by this relationship. This son lives in Santa Monica, California.
- *Respondents Susan Howard and Patricia Schlener* are Mother's twin daughters and the son's twin sisters. We

2

refer to Howard and Schlener collectively as the daughters. The daughters live in Idaho.

- *Respondent Charles Bluth* is the mother's brother and uncle to the daughters and the son. Bluth lives in Nevada.

The mother is the current beneficiary of the Trust. Before 2017, the Trust named the daughters, the son, and Elizabeth Rakestraw (the mother's granddaughter) as successor beneficiaries.

The Trust was administered in California from 2005 to 2016. After the mother's husband died in 2005, Bluth began to help the mother—his sister—run the Trust. Bluth's precise level of involvement is disputed, as we will describe.

September 30, 2016 was a watershed for the family and its Trust. What happened that day depends on who tells the story.

The son's version goes like this. He is the only child to have worked in the family real estate business. He spent time caring for his parents "more than any other child" in the family. He lived with and cared for his mother in their family home in Santa Monica until a medical condition hospitalized her at St. John's Hospital in Santa Monica, which later released her to a local rehabilitation facility. But on September 30, 2016, the son's twin sisters—the daughters—conspired to kidnap Mother from that facility. One daughter and the other daughter's child came at night to remove their mother from the facility, against medical advice, and to take her to Idaho, where the daughters live. The other daughter and Bluth assisted them. The mother remains in Idaho, isolated and under the undue influence of the daughters. When the son tried to visit his mother there, the daughters "and others acting in concert with them" have blocked his visits with "threats of violence." The mother's actions since 2016 ostensibly

3

have cut the son out of the Trust and thus out of his inheritance. The Trust sold some of its California properties at fire sale prices. The son suspects these actions stem from his sisters' manipulation and control of their mother. That is the son's view of events.

The daughters and the mother paint a different picture. They say the son is a ne'er-do-well who neither went to college nor gained marketable skills but just lived off the family's wealth. The mother fears her son's anger management problem. When she fell and got hurt, her son abused her by locking her away without proper food or care, hoping to hasten her demise and his inheritance. To escape him, the mother left the California rehabilitation facility of her own free will. Although advanced in years, the mother continues to make independent personal and financial decisions, including the decisions to relocate permanently to Idaho and to disinherit her son. All her property transactions have been prudent and proper. The son's allegations are simply "wild." That is the mother's and the daughters' account.

We cannot and need not resolve this family dispute. Our task is to analyze the issue of personal jurisdiction in the face of this ongoing factual conflict. We base our analysis only on undisputed record facts.

The mother and the daughters claim the mother made crucial changes to the Trust in 2016 and 2017. The mother produced evidence she amended the Trust in these years to remove her son and Rakestraw as beneficiaries and her son and Bluth as successor trustees. In 2017, the mother registered the Trust in Idaho. California law still governs the Trust, as the mother and her daughters conceded at oral argument.

4

The Trust's assets have changed since 2016. The Trust formerly held interests in many real properties in California. Then the Trust transferred most of these properties so that now most of its assets—more than 40 real properties and all bank accounts—are in Idaho.

Since moving to Idaho, the mother has filed four lawsuits in California. She brought an unlawful detainer action against her son to evict him from the former family home in Santa Monica. She filed a 2017 partition action concerning land in Malibu. She sued in 2018 to dissolve a partnership and to sell a Coachella date farm the partnership owned. The Trust has interests in both the Malibu and the Coachella properties. The son's lawyers also assert the mother filed a spousal property petition in California. The mother filed all these actions in state court in Los Angeles County.

The son opposed his mother's recent real estate transactions. He filed this lawsuit, arguing the transactions violated the Trust's interests and his interests as well. He claimed the daughters and Bluth participated in these transactions. The son sought an accounting and the removal of the mother, the daughters, and Bluth as trustees.

On occasion, we refer to the mother, the daughters, and Bluth collectively as Respondents.

The mother and daughters moved to quash the son's petition for lack of personal jurisdiction. They also sought dismissal for lack of standing and for "mandatory" venue in Idaho. Bluth joined the motions. No party brought a forum non conveniens motion.

The son opposed the motions, relying on allegations in his verified petition and on pleadings from other cases pending in California involving some or all the parties.

The trial court ruled the son failed to establish Respondents' minimum contacts with California. The court also assumed the case could move forward in Idaho and declined to accept jurisdiction.

The son appealed, arguing the trial court's personal jurisdiction ruling was wrong. The mother and daughters filed responsive briefs that blend concepts of venue, standing, and jurisdiction. Bluth joined this briefing. No party appealed any determination regarding standing or venue. The trial court's ruling on personal jurisdiction is the only matter before us.

## II

The mother incorrectly argues the trial court's order is a non-appealable denial of an accounting. In fact, the order granted the motions to quash and dismissed the case without prejudice. That order is appealable. (See Code Civ. Proc., § 904.1, subd. (a)(3); see also Prob. Code, § 1000, subd. (a) [rules for civil actions generally apply in probate matters].) We treat this matter as the son's appeal and not as an extraordinary writ.

## III

We review personal jurisdiction law.

When a defendant moves to quash service for lack of personal jurisdiction, the plaintiff must establish by a preponderance of the evidence the facts justifying the exercise of jurisdiction. The burden then shifts to the defendant to demonstrate exercising jurisdiction would be unreasonable. (*Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 553.)

We draw all reasonable inferences in support of the trial court's order. (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.) When the evidence conflicts, we defer to the trial court's factual findings when substantial evidence supports them. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*), abrogated on other grounds by *Bristol-Myers Squibb v. Superior Court* (2017) ___ U.S. ___, ___ [137 S.Ct. 1773, 1781] (*Bristol-Myers*).) When evidence does not conflict, we independently review both the record and the trial court's application of law to facts. (*Vons*, at p. 449.)

Among other findings, the trial court specifically found most of the Trust properties currently are in Idaho, the son is no longer a Trust beneficiary, and the mother has moved to Idaho. We accept those factual findings and do not question them.

As matters of state law, personal jurisdiction rules are the same for civil and trust proceedings. (See Prob. Code, § 17004 ["The court may exercise jurisdiction in proceedings under this division on any basis permitted by Section 410.10 of the Code of Civil Procedure."].) California courts may exercise jurisdiction to determine matters concerning trust property located in California—particularly land—even if the trust is administered elsewhere. (Cal. Law Revision Com. com., 54A pt. 1 West's Ann. Prob. Code (2011 ed.) foll. § 17004, p. 306.)

Also as a matter of state law, California courts may exercise jurisdiction on any basis consistent with the state or federal Constitutions. (Code Civ. Proc., § 410.10.)

Because state law in this field stretches to the limits set by federal law, state law here incorporates federal law. California state courts cannot extend the reach of their personal jurisdiction beyond federal limits. (E.g., *Bristol-Myers*, *supra*, 137 S.Ct. at

7

p. 1779.)  We focus on the defendants' relationship to the forum state when assessing personal jurisdiction.  (*Ibid*.)  Jurisdiction is proper if a defendant has minimum contacts with the state such that the lawsuit does not offend traditional notions of fair play and substantial justice.  (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 126.)

Personal jurisdiction can be all-purpose (also called "general") or case-linked (also called "specific").  (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1779–1780.)  The parties limit their focus to case-linked jurisdiction.  We do too.  With case-linked jurisdiction, the court may adjudicate only those disputes relating to defendants' contacts with the forum.  (*Id*. at p. 1780.)

A three-part test governs case-linked jurisdiction.  With our emphasis, case-linked jurisdiction is proper when:

(1) defendants have *purposefully availed* themselves of forum benefits;

(2) the controversy *relates* to the defendants' contacts with the forum; and

(3) the exercise of jurisdiction comports with *fair play* and substantial justice.  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)

IV

The trial court had case-linked personal jurisdiction over the mother, the daughters, and Bluth.  All four have been deeply involved with this Trust, which is a stronghold of this family's wealth.  The Trust originated and was administered in California.  It is governed by California law.  It holds interests in California real estate.  The mother, daughters, and Bluth claim the mother has moved the Trust to Idaho and has cut all ties to

8

California, but the propriety and effectiveness of that effort is the focus of this California lawsuit.

A

The first prong of the three-part test is "purposeful availment":  have defendants purposefully availed themselves of forum benefits?  We consider whether the defendants' conduct connects them to the forum in a meaningful way.  (*Walden v. Fiore* (2014) 571 U.S. 277, 290.)  Defendants purposefully avail themselves of a forum's benefits if they intentionally direct their activities at a forum such that, by virtue of the benefit the defendants receive, they should reasonably expect to be subject to jurisdiction there.  (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475–476 (*Burger King*).)  By focusing on the defendants' reasonable expectations, this requirement ensures defendants will not be haled into a jurisdiction solely because of fortuitous or attenuated contacts or because of the unilateral activity of another party.  (*Id.* at p. 475.)

The mother, the daughters, and Bluth intentionally connected with California for their own benefit.  Their choices overwhelmingly satisfy the purposeful availment prong.

The mother's acceptance of the trusteeship and trust benefits connected her to California.  The mother is the central living figure in this Trust.  As a lifelong Californian, she helped establish the Trust here in 2005.  She and her husband chose California law to govern it.  Her Trust held and continues to hold interests in California real estate.  (See *Khan v. Superior Court* (1988) 204 Cal.App.3d 1168, 1179 [one who claims an interest in property located in California generally expects to benefit from the state's protection of this interest].)

9

Since leaving California, the mother has filed four lawsuits in California state courts. Some of these lawsuits involve Trust property.

Since leaving California, the mother has engaged in transactions aimed at extinguishing the Trust's interests in this California real estate. The fact is undisputed that these transactional efforts occurred, as is the mother's ostensible role in them. That is what counts: the mother (or someone in her name) has been transacting about land in California.

We note the sharp disagreements about the transparency, wisdom, and effectiveness of these California land deals. The mother says she truly and fully was the one in charge, notwithstanding her age, and her deals were proper, effective, and wise. On the other hand, her son says his sisters are Rasputins who have taken over and engaged in illegal follies. The trial court took no view on this blazing family dispute. Neither do we. It does not affect our jurisdictional analysis.

In sum, the mother has been a longtime California resident, a California property owner, a California trust creator and participant, and a California plaintiff. The mother purposefully availed herself of this state's benefits, beyond question.

The daughters also have ample California connections. They are successor beneficiaries and successor trustees of the Trust, which originated in California, which is governed by California law, and which has owned and still owns California real estate. The daughters participated in Trust transactions, according to the son's verified petition. The daughters do not deny some level of involvement: their declarations give details about some of the transactions and maintain the transactions

were "done correctly."  There is no dispute the daughters or their agents physically came to the California rehabilitation facility to get their mother and to move her to Idaho, which triggered the Trust changes at issue.  The daughters have purposely availed themselves of California's benefits.

Again we note the family dispute that does not affect our analysis.  The son says his sisters and their agents kidnapped their mother.  The daughters and (ostensibly) the mother say the mother's exit was a voluntary escape and indeed a rescue that saved the mother from a scary and abusive son.  The trial court made no finding about *why* the mother left California for Idaho.  Neither do we.  For our jurisdictional analysis, the key point is California was the travel destination for the daughters and their agents.  They chose to come to the state to accomplish results important to them—results that related to the dispute over control over the family Trust.

The same holds true for Bluth.  Whatever the exact extent and duration of his involvement, Bluth had some role in managing the California Trust, as we will discuss.  Bluth also participated in the Trust's real estate transactions, according to the son's verified petition.  Bluth assisted in moving his sister from California to Idaho, which was the event that changed everything about the Trust's operation.  Bluth's involvement with the Trust shows he purposively availed himself of California's benefits.  Bluth wanted his say in family affairs, including the Trust.  These family affairs have been, and continue to be, linked to California.

This case differs from a trust dispute decided in the landmark case of *Hanson v. Denckla* (1958) 357 U.S. 235.  There, a Pennsylvania resident created a trust in Delaware and named

11

Wilmington Trust Co., of Wilmington, Delaware as the trustee. (*Id.* at p. 238.) The settlor moved to Florida, where she exercised her power of appointment and eventually died. (*Id.* at p. 239.) Individuals who stood to benefit from the settlor's will but not the trust contested the validity of the trust and sued the trustee and others in Florida, where they lived. (*Id.* at pp. 240–242, 247, fn. 16.) The Supreme Court found the Delaware trustee lacked minimum contacts with Florida to support personal jurisdiction. (*Id.* at p. 251.) Wilmington Trust Co. had no office in Florida. It did not solicit or do business in Florida. The trust assets were not in Florida. They had never been administered there. (*Ibid.*) The settlor had moved to Florida and then exercised her power of appointment. And Wilmington Trust Co. had remitted trust income to her there. But these acts were not enough to establish personal jurisdiction over Wilmington Trust Co. (*Id.* at pp. 252, 254.) "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (*Id.* at p. 253.) For purposes of personal jurisdiction, the acts of the defendant trustee mattered, and these were insufficient to support jurisdiction. (*Id.* at p. 254.)

Unlike the trust in *Hanson*, the trust here was embedded in California from the beginning. It continues to own California property and to be governed by California law. And the mother, the daughters, and Bluth have all connected themselves to California, as we have explained. In each way they departed from the parochial insularity of the Wilmington Trust Co.

Respondents incorrectly tell us the son supplied no evidence to support case-linked jurisdiction. They say his verified

12

petition and allegations made on information and belief were insufficient to defeat a motion to quash.

These arguments are contrary to precedent. The mother cites *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, but this case refutes Mother's argument. (*Id.* at p. 217 ["Generally, a properly verified complaint—or in this case a properly verified petition—may be treated as a declaration or affidavit."].)

The son verified his petition, thus converting it into the functional equivalent of a declaration like the ones the mother and her daughters have filed for themselves.

The mother also cites *Strauch v. Eyring* (1994) 30 Cal.App.4th 181, but that holding is consistent with *ViaView*, for the pleadings in *Strauch* were *not* verified. The holding in *Strauch* does not favor the mother.

*Strauch* does contain a dictum the mother quotes, but as support for its dictum the *Strauch* court cited an outdated treatise. The relevant portion from the current treatise defeats the mother's argument: "Jurisdictional facts must be proved by admissible evidence. This generally requires declarations by competent witnesses. *A properly verified complaint may be treated as a declaration for this purpose.*" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 3:387, italics added.)

The mother made only one specific objection in the trial court, which was to paragraph 20 of the son's verified petition. (Cf. Evid. Code, § 353, subd. (a); Assem. Com. on Judiciary, com. on Assem. Bill No. 333 (1965 Reg. Sess.) reprinted at 29B pt. 1A West's Ann. Evid. Code (2011 ed.) foll. § 353, pp. 598-599 [objections must specify the grounds for objection; general objections are insufficient].) Paragraph 20

13

asserted Bluth and the daughters had managed the Trust since the mother moved to Idaho, and Bluth resigned as a trustee in 2017, leaving the daughters in sole control. The mother objected to the son's statement Bluth was acting as trustee and the daughters were acting as cotrustees. This objection extended to Bluth's 2017 resignation.

The mother's objection in the trial court was insufficient. She did not object to paragraphs 16 through 19 of the son's petition. Nor did she object to exhibits B and C to the petition, which these paragraphs authenticated. This verified testimony established Bluth played a major role in managing the Trust for the better part of a decade. Nor did the mother object to paragraphs 4, 22, and 23 of the petition, which asserted the daughters both were Trust beneficiaries and had acted as its trustees.

The trial court made no findings on these issues. The material in the son's verified petition to which there were no proper objections is in the record. The son's ample evidentiary showing countered the motion to quash.

At oral argument, the mother's counsel argued we are limited to the facts the parties and the trial court cite and we are unable to consider undisputed evidence in the record. This view is contrary to the law. (See *Vons*, *supra*, 14 Cal.4th at p. 449.)

The mother also argues the trial court lacked jurisdiction over her because she moved to Idaho before she began selling the California property. She thus argues any allegedly wrongful acts took place out of state. Similarly, the daughters say they have lived in Idaho the whole time and have had no contacts with California.

14

These arguments fail.  A defendant need not physically enter California at all to be subject to personal jurisdiction here. (*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1075.)  Nor can the mother undo her lifelong California contacts by moving to a new state.  No matter where they now live, Respondents' activities have involved a trust that was created and managed in California, that is governed by California law, and that owned—and still owns—California real property.  Respondents have purposefully availed themselves of the California forum.

B

Next we tackle the second prong about "*relatedness*": whether the son's claims *relate* to Respondents' contacts with California.  We look for a substantial connection between Respondents' forum activities and the son's claims.  (*Vons*, *supra*, 14 Cal.4th at pp. 452, 456.)

We need not look far.

The son's claims relate to Respondents' contacts. Respondents are connected to California through the Trust, which is the topic of the son's suit.  His lawsuit asserts his mother, her daughters, and Bluth harmed him and the Trust by engaging in below-market California land deals.  The son also argues the date farm transaction showed the mother created an impermissible conflict of interest.  The son claims these transactions rendered Respondents unfit to serve as trustees. His lawsuit seeks appointment of a professional fiduciary as trustee and an accounting.  The son alleges he asked for an accounting but Respondents have refused to supply one.

The son's showing satisfies prong two of the test.

15

## C

We finally take up prong three: is exercising jurisdiction here fair?

In assessing fairness, we consider the burden on the defendants, California's interests in hearing this dispute, the plaintiff's interest in obtaining convenient and effective relief, judicial economy, and the states' shared interest in furthering fundamental substantive social policies. (*Burger King*, *supra*, 471 U.S. at p. 477; *Vons, supra*, 14 Cal.4th at p. 448.) To defeat jurisdiction, the defendant must present a compelling case that exercising jurisdiction would be unreasonable. (*Burger King*, *supra*, at p. 477; *Vons*, *supra*, at p. 476.)

Respondents have not met this burden.

Respondents argue as follows. The mother is aged. Litigation with her son has taken a toll on her health, she has certain health issues about which we lack details, and it is difficult for her to travel. Mother has lived in Idaho since 2016 and intends to remain there indefinitely. She has cut most ties with California. Now, most of the Trust property is in Idaho, and the Trust is registered there. Witnesses concerning the mother's health and competence are in Idaho. The daughters and Bluth live out-of-state. Daughter Howard has been undergoing cancer treatment in Idaho.

Respondents also surmise there are apt to be few documents in California (apart from documents the son took) and few witnesses in California other than the son himself. They assert information about recent Trust purchases is in Idaho. Without explaining why, they also imply it would be unfair and absurd to have a California professional trustee managing Idaho assets.

16

The son asks us to consider his perspective. He is a California resident. California trustors established the Trust in California to be governed by California law. The events at the heart of this dispute—the sale and attempted sale of Trust property in California—were consummated in California. Witnesses and documents regarding these events are in California. Litigating in California is not burdensome, as the mother has demonstrated with her numerous lawsuits in Los Angeles. The mother cannot be too infirm to defend a lawsuit here because she swears she still makes her business and financial decisions independently. She has been a serial California plaintiff.

It is fair to exercise jurisdiction here. As a resident of California, the son has a valid interest in obtaining relief in California for harm he claims from the sale of property in California. When it suited the mother's purposes, she repeatedly has chosen to litigate in California from Idaho. Undisputedly, the daughters or their agents came to California to move the mother to Idaho. There is an unresolved issue about why they did this: was it a rescue or a kidnapping? We take no view on that unresolved issue. Neither did the trial court. But the daughters' undisputed decision physically to come to California, either personally or via agent, is significant. It is fair they return to California to defend the actions following in the wake of the mother's move. Bluth has been a successor trustee from the start of this Trust and has managed its affairs for his sister, who lived in California for 89 years. Bluth's connection with California is deep and wide.

Respondents emphasize the mother's age and the one daughter's cancer. We have no doubt the trial court will be

17

sensitive to the health concerns of all involved and will make suitable arrangements.  When advisable, trial judges regularly make accommodations of all sorts.  At this moment, lawyers, parties, and courts are discovering the many ways technology can reduce or eliminate the burdens of travel.  Moreover, at oral argument, the son's counsel committed on the record, going forward, to enter reasonable and loving stipulations to minimize the burdens of this litigation on his aged mother and his suffering sister.  This prospective and enforceable flexibility and compassion softens the burdens of age and illness in this context.

California is a fair place to resolve this family dispute about their Trust.

V

Respondents make arguments concerning Probate Code sections 17002 and 17005 that are unavailing.  These state statutes do not pertain to the threshold constitutional issue of minimum contacts.  They are venue statutes.

Venue is separate from personal jurisdiction.  This appeal concerns only personal jurisdiction.  Accordingly, Probate Code sections 17002 and 17005 are inapplicable.

## DISPOSITION

We reverse the trial court's order and remand for further proceedings. We award costs to Walter Van Buskirk III, and grant the request for judicial notice.

WILEY, J.

We concur:

BIGELOW, P. J.

GRIMES, J.