[No. B009597. Second Dist., Div. Seven. Aug. 26, 1986.]

NATIONAL MARBLE COMPANY OF CALIFORNIA, INC.,
Plaintiff and Appellant, v.
BRICKLAYERS AND ALLIED CRAFTSMEN, LOCAL NO. 2 et al.,
Defendants and Respondents.

**COUNSEL**

Andrade & Hargan and Mark C. Hargan for Plaintiff and Appellant.

Karp & Mooney, Gregory Mooney and Shelley Kaufman for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—(1) (See fn. 1.) National Marble Company of California, Inc. (National) appeals from an order denying its petition to vacate an arbitration award and granting a request for confirmation of the award.[1]

---

[1]It is the judgment confirming an arbitration award, not the order granting request for confirmation, which is appealable. (Code Civ. Proc., §§ 1287.4, 1294, subd. (d); *Arrieta v. Paine, Webber, Jackson & Curtis, Inc.* (1976) 59 Cal.App.3d 322, 326, fn. 1 [130 Cal.Rptr. 534].) Inasmuch as a judgment of confirmation was entered herein after the notice of appeal was filed, we construe the order granting request for confirmation specified in the notice to refer to the judgment. (See Cal. Rules of Court, rules 1(a), 2(c): *Hohn v. Hohn*

## Factual and Procedural Background

At all times herein mentioned, National was engaged in the manufacture of synthetic marble products, fiberglass molds and tooling. Occasionally National was called upon to install a product it manufactures; on those occasions the product was installed for National's customer by Anthony Chiechi, who was employed by National as an installer. In 1972 Chiechi became a member of Bricklayers and Allied Craftsmen, Local No. 2 (Union) and remained a member at all times thereafter. Prior to 1976 National operated as a nonunion company, not having entered into a collective bargaining agreement with any union. On September 20, 1976, at the urging of a business manager of the Union, National's president signed, and thereby bound National to, a collective bargaining agreement between the Executive Council of the California Conference of Mason Contractor Associations, Inc. (CCMCA) and the Union.

The agreement was for the term July 2, 1976—April 30, 1978, and continued for the terms of any subsequent agreements between the CCMCA and the Union. It was further provided that the agreement could be terminated by either the Union or National by the giving of written notice of intention to terminate "given to the other party at least sixty (60) days prior to the termination date of this Agreement or sixty (60) days prior to the termination date of any subsequent Agreements entered into between the aforesaid CCMCA and the Union." Subsequent to the agreement signed by National, the CCMCA and the Union entered into three consecutive agreements for the following terms, respectively: May 1, 1978, to April 30, 1980; June 4, 1980, to April 30, 1982; and May 7, 1982, to April 30, 1984.

Both the agreement executed by National and the latest agreement contained a provision (art. X) obligating National to pay contributions each month to the Brick Masons Trust Funds (health and welfare trust fund, pension trust fund, apprenticeship and training trust fund, and vacation trust fund) based on the number of hours worked by its union employee. Also included in both agreements was a provision (art. III) whereby a board, consisting of members designated by the CCMCA and the Union, is given authority to enforce the agreement; after the board has given an accused

(1964) 229 Cal.App.2d 336, 338-340 [40 Cal.Rptr. 125].) The purported appeal from order confirming the award is dismissed.

Where, as here, a party appeals from order denying his petition to vacate an arbitration award and from judgment confirming the award, the appeal from the order does not lie for such is in effect an appeal from the judgment confirming the award and is reviewable on appeal from the judgment. (*Hyatt* v. *Eckel Valve Co.* (1959) 169 Cal.App.2d 35, 39 [336 P.2d 551]; cf. *Jordan* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 127, 129 [42 Cal.Rptr. 556].) Accordingly, National's appeal from the order denying its petition to vacate the award is dismissed.

contract violator the opportunity to appear before it, the board may find a violation and assess damages against the violator.

By letter dated February 23, 1983, National advised the Union of its intention to terminate the agreement "in accordance with the termination provisions of said agreement, which by its terms terminates on April 30, 1983." Thereafter, as required by the agreement, National continued to make contributions to the trust funds, on behalf of its union employee Chiechi, for each month to and including August 1983. On November 28, 1983, the board cited National to appear before it on December 6 to answer charges based on National's failure to pay contributions to the trust funds after August 1983. On December 6, 1983, National wrote to the board informing it that "[b]y way of this letter" National was making a special appearance to contest the board's jurisdiction to hear the matter on the ground that the agreement had terminated April 30, 1983. On December 6, 1983, the board determined that National was in violation of article X of the agreement and ordered that it pay contributions and liquidated damages to the trust funds for the months of September and October 1983.

National petitioned the superior court for an order vacating the award (Code Civ. Proc., § 1285 et seq.) on the ground the board's authority, derived from the collective bargaining agreement, expired with the termination of the agreement on April 30, 1983, almost eight months before the date of the board's determination and award. The petition further alleged that National's agreement with the Union was a prehire agreement under section 8(f) of the Labor Management Relations Act (LMRA) (29 U.S.C. § 158(f)); accordingly, regardless of its termination provisions, National was entitled to repudiate the agreement at any time because the Union never obtained majority status among National's employees. In their respective responses to the petition, the Union and the Brick Masons Trust Funds requested that the award be confirmed. (Code Civ. Proc., § 1285.2.) All parties requested an award of attorney fees pursuant to section 301 of the LMRA (29 U.S.C. § 185).

The petition to vacate the award was denied, the request to confirm the award was granted, and Union and the Trust Funds were awarded the sum of $125, in the aggregate, as attorney fees. Judgment was entered confirming the award. National appeals from the judgment. (See fn. 1.)

DISCUSSION

I

JURISDICTION OF BOARD

 Relying on the rule that the existence of an underlying agreement to arbitrate is to be decided by a court rather than an arbitrator (*John Wiley*

& *Sons,* v. *Livingston* (1964) 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903, 84 S.Ct. 909]; *Northern Cal. Dist. Council of Hod Carriers* v. *Pennsylvania Pipeline, Inc.* (1980) 103 Cal.App.3d 163, 170 [162 Cal.Rptr. 851]), appellant argues, as it did below, that the award must be vacated because respondents failed to bring a court action to compel arbitration which necessarily would have decided the issue of arbitrability. The contention lacks merit.

The statutory remedy to compel arbitration embodied in Code of Civil Procedure section 1281.2[2] was designed to afford a remedy where the parties did not provide for the contingency of refusal to comply with a request to arbitrate. (*Brink* v. *Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 579-580 [25 Cal.Rptr. 556, 375 P.2d 436]; *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 354 [175 Cal.Rptr. 226].) "A written agreement to submit a controversy to arbitration is valid and enforceable (Code Civ. Proc., § 1281) and, if the arbitration clause is self-executing, a prior court order to arbitrate under section 1281.2 is not necessary. [Citation.]" (*Mitchum, Jones & Templeton, Inc.* v. *Chronis* (1977) 72 Cal.App.3d 596, 600 [140 Cal.Rptr. 160].) ■ An arbitration agreement is self-executing where it "permits and provides for arbitration under rules therein incorporated." (*Id.,* at p. 601.) ■ Article III of the collective bargaining agreement in the present case provides in pertinent part: "In order to correctly enforce this Agreement an Area Wide Board shall be established for said purpose. . . . [¶] The Local Unions or the CCMCA may present to this Area Wide Board in writing, all facts concerning a possible violation of this Agreement. . . . After the Area Wide Board has heard testimony of the accused violator or has provided an opportunity for the accused violator to appear before the Area Wide Board or answer the alleged charges in writing, [and] the Area Wide Board has agreed that the accused violator has violated this Agreement, the Area Wide Board may assess damages against the accused violator . . . ." It is further provided that any action or decision of the board is final and binding on all parties covered by the agreement. While article III does not incorporate rules setting forth a scheme for arbitration (compare, e.g., *King* v. *Larsen Realty, Inc., supra,* 121 Cal.App.3d 349, 355; *Kustom Kraft Homes* v. *Leivenstein* (1971) 14 Cal.App.3d 805, 811 [92 Cal.Rptr. 650]), its provisions are self-executing in the more fundamental sense that they set forth, without the necessity of resort to extrinsic material, the procedure to be followed by the board in deciding contractual disputes. (See *Brink* v. *Allegro Builders, Inc., supra,* 58 Cal.2d 577, 578-579.)

---

[2]Code of Civil Procedure section 1281.2 provides in pertinent part: "On the petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ."

■ Where an arbitration proceeds under a self-executing agreement without a preliminary court order, the objecting party is required to participate in the proceeding and then raise his objections by petition to vacate the award (Code Civ. Proc., § 1286.2) or by opposition to a petition to confirm. (See *Mitchum, Jones & Templeton, Inc.* v. *Chronis, supra,* 72 Cal.App.3d 596, 600-601; *Titan Enterprises, Inc.* v. *Armo Construction, Inc.* (1973) 32 Cal.App.3d 828, 831-832 [108 Cal.Rptr. 456].) In its petition to vacate the award, appellant alleged that the board lacked jurisdiction to render the award because the agreement, which gave the board the power to act, was terminated before appellant's violations thereof occurred and the award was rendered. By its judgment confirming the award, the trial court resolved that issue against appellant.

## II

### CONFIRMATION OF AWARD

The basis of the trial court's ruling, set forth in a minute order, was as follows: "(1) Petitioner's own papers show that there was only one employee to be covered by the agreement. It is shown that he was a member of the union. Accordingly, there appears to be 100 percent membership in the only conceivable unit and it is doubtful if this is a pre-hire agreement, terminable for that reason upon repudiation. [¶] (2) The February 1983 termination letter was not effective until April 30, 1984, in light of the showing concerning Mason's Conference agreements with the union." The court made a formal finding that the agreement did not expire until April 30, 1984, and the parties therefore were bound by it at the time the contractual dispute arose and was arbitrated.

### A. *Termination of Agreement as Prehire Agreement*

■ Appellant contends that its agreement with respondent Union was a prehire agreement; as such, it was subject to termination (and was terminated as of April 30, 1983, by appellant's letter of February 1983) inasmuch as appellant's only employee covered by the agreement did not constitute the Union's achievement of majority status among appellant's employees.

■ Because of the uniquely temporary, transitory and sometimes seasonal nature of much of the employment in the construction industry, section

8(f) of the LMRA (29 U.S.C. § 158(f))[3] authorizes so-called "prehire" agreements whereby "construction industry employers and unions [are exempted] from the general rule precluding a union and an employer from signing 'a collective-bargaining agreement recognizing the union as the exclusive bargaining representative when in fact only a minority of the employees have authorized the union to represent their interests.' [Citations.]" (*Jim McNeff, Inc. v. Todd* (1983) 461 U.S. 260, 265 [75 L.Ed.2d 830, 835, 103 S.Ct. 1753].) ■ A section 8(f) prehire agreement is subject to repudiation at any time prior to the union's achieving majority status among the employees of the employer. (*Id.,* 461 U.S. at p. 271 [75 L.Ed.2d at p. 839].) Thus, the right to repudiate such an agreement "is a matter of substantive federal law, regardless of the terms of the agreement itself." (*Northern Cal. Dist. Council of Laborers v. Robles Concrete Co.* (1983) 149 Cal.App.3d 289, 293 [196 Cal.Rptr. 776].)

In *Operating Eng. Pen. Trust v. Beck Eng. & Surveying* (9th Cir. 1984) 746 F.2d 557, decided after entry of judgment herein, the court noted that the National Labor Relations Board "may not and will not ascertain majority status in a single-employee unit," and held that "a construction industry employer who employs a single employee pursuant to a Section 8(f) prehire agreement is entitled to repudiate the agreement by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." (746 F.2d at pp. 565, 566.) It was further stated: "The district court correctly concluded that the agreements between [union] and [employer] were construction industry pre-hire agreements under Section 8(f) of the LMRA, voidable at any time by the employer prior to the union's attainment of majority status; that [employer's] letter . . . was a sufficiently clear manifestation of his intent to repudiate the agreement immediately; that the repudiation was effective . . . when the letter was received by [union]; and that [employer] had no further obligations under the agreement after that date." (*Id.,* at p. 567.) Relying on the foregoing language, appellant insists that the judgment herein must be reversed. We do not agree.

■ In the *Operating Eng.* case, the trial court found that the agreements covering the single employee were construction industry prehire agreements. In the present case, the trial court concluded it was doubtful that the agree-

---

[3]Section 158(f) provides in pertinent part: "It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement. . . ."

ment covering appellant's employee Chiechi was a prehire agreement. Such conclusion is supported by the record.

In order to constitute a prehire agreement under section 8(f), the agreement in question must be with an employer engaged primarily in the building and construction industry; an employer whose involvement in construction work is only a negligible part of his business is not entitled to enter into a prehire agreement. (*Operating Eng., supra,* 746 F.2d at pp. 562, 563.) The declarations of appellant's president stated that its business is the manufacture of synthetic marble products, fiberglass molds and tooling, as well as consulting work in the marble and fiberglass industries; appellant "occasionally" is called upon to install products it manufactures; such installation is "considered to be construction industry work" and requires that appellant be a licensed contractor pursuant to the California state contractor licensing laws; at all times appellant has possessed a valid California contractor's license. Far from showing that appellant is engaged primarily in the building and construction industry, the declarations indicate that construction work is an insubstantial part of appellant's business. Inasmuch as appellant furnished no figures showing the percentage of revenue attributable to its installation work, there was no basis for a finding that appellant is engaged primarily in the construction and building industry. (See *Operating Eng., supra,* 746 F.2d at p. 563, and cases therein cited.) ■ Under the arbitration statute (Code Civ. Proc., § 1280 et seq.) both the superior court and the appellate court must give every intendment of validity to an award, and the burden is on the party claiming invalidity to support such claim with evidence. (*Walter* v. *National Indem. Co.* (1970) 3 Cal.App.3d 630, 633 [83 Cal.Rptr. 803]; *Horn* v. *Gurewitz* (1968) 261 Cal.App.2d 255, 261 [67 Cal.Rptr. 791].) ■ Appellant failed to sustain that burden insofar as its attack on the award was based on the allegation that its agreement with respondent Union was a prehire agreement, effectively terminated by appellant before the contractual dispute arose and was arbitrated.

Further, even under appellant's theory that the agreement was a prehire agreement, there was no conduct on its part unequivocally manifesting an intention to terminate the agreement. Thus, while appellant's letter of February 23, 1983, informed respondent Union of appellant's intention to terminate the agreement on April 30, after the latter date appellant continued to make monthly contributions to the trust funds, as required by the agreement, to and including August 1983. Such conduct clearly negated appellant's announced intention to repudiate the agreement.

B. *Termination Under Provisions of Agreement*

■ Where, as here, a contract has been interpreted as a matter of law without the aid of extrinsic evidence, a reviewing court is not bound by the

trial court's construction but must make its own independent interpretation. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Sands* v. *E.I.C., Inc.* (1981) 118 Cal.App.3d 231, 234 [173 Cal.Rptr. 342].) ▉ Our interpretation of the termination provisions of the collective bargaining agreement coincides with that of the trial court and compels the conclusion that despite appellant's attempted termination, the agreement was in effect throughout 1983.

The following provisions appeared on the signature page of the agreement to which appellant was a signatory:[4] "This Agreement may be terminated by either the Unions or the undersigned employer by the giving of written notice by registered mail of intention to terminate this Agreement given to the other party at least sixty (60) days prior to the termination date of this Agreement or sixty (60) days prior to the termination date of any subsequent Agreements entered into between the aforesaid CCMCA and the Union. . . . [¶] This agreement shall become effective as of the date shown below and shall continue in effect for the duration of this Agreement . . . . and for the duration of any subsequently negotiated labor agreements executed by the aforesaid CCMCA and the Unions . . . ." Subsequent to the foregoing agreement, the CCMCA and respondent Union entered into three consecutive agreements with terms ending, respectively, April 30, 1980, April 30, 1982, and April 30, 1984.

▉ The language of a contract, if clear and explicit, governs its interpretation. (*Sands* v. *E.I.C., Inc., supra,* 118 Cal.App.3d at p. 234.) ▉ Under the above quoted provisions, the agreement continued in effect for the terms of all subsequent agreements between the CCMCA and the Union; it could be terminated only by giving notice at least 60 days prior to the termination date of the agreement currently in force. Inasmuch as none of the subsequent agreements had a termination date of April 30, 1983, appellant's letter of February 1983, giving notice of its intention to terminate the agreement on April 30, 1983, did not effect a termination on the latter date; it could have worked a termination only on April 30, 1984, the concluding date of the latest agreement. It follows that appellant was bound by the agreement both when its alleged violations thereof occurred (Sept. and Oct. 1983) and when the board acted on those violations (Dec. 1983).

---

[4]In the record on appeal, the printed provisions on the signature page of the agreement are, in large part, illegible. The provisions quoted are those included in a later agreement between the CCMCA and the Union which we assume are the same as the provisions on the signature page of the agreement signed by appellant's president.

## III

### ATTORNEY FEES

Appellant argues it was entitled to an award of reasonable attorney fees for bringing its petition to vacate the award. In support of this contention appellant cites *Northern Cal. Dist. Council of Laborers v. Robles Concrete Co., supra,* 149 Cal.App.3d 289, wherein it is stated: "Federal case law makes clear that in a suit brought under section 301 of the LMRA, the award of attorneys' fees is within the discretion of the trial court. [Citations.] '[S]tate procedural law may not be applied in such [LMRA, § 301] cases if it would impede the uniform application of the federal statute essential to effectuate its purpose. [Citations.]' [Citation.] In accordance with the desirability of uniform decisions in the area of labor relations, we hold that the state court has the discretion to award attorneys' fees in an LMRA section 301 case." (P. 295.) In the present case the trial court determined that federal law was applicable and awarded attorney fees to respondents. Appellant does not directly challenge that award, but instead argues it was entitled to attorney fees because respondents denied appellant's request to vacate the award voluntarily, thereby forcing appellant "to seek to vacate a clearly improper arbitration award." Such argument fails to show an abuse of discretion by the trial court in its refusal to award attorney fees to appellant. (See *United Steelworkers of America v. Ideal Cement Co.* (10th Cir. 1985) 762 F.2d 837, 843.)

### DISPOSITION

The appeal from order denying appellant's petition to vacate the award and granting respondents' request to confirm the award is dismissed. The judgment confirming the award is affirmed.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied September 15, 1986.