Filed 9/12/24  McCollam v. Royal Alliance Associates CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RICHARD McCOLLAM,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ROYAL ALLIANCE ASSOCIATES, INC.,<br><br>　　　Defendant and Respondent. | A169192<br><br>(City & County of San Francisco Super. Ct. No. CPF22517843) |

Richard McCollam has filed an appeal from an order denying his petition to vacate an arbitration award on the ground that it was procured by fraud.  (Code Civ. Proc., § 1286.2; statutory references are to this code unless otherwise indicated.)  The denial of a petition to vacate an arbitration award is not an appealable order.  (§ 1294.)  To avoid unnecessary delay, however, we will direct the superior court to enter judgment nunc pro tunc as of the date of the order denying McCollam's petition.  Finding no valid basis for McCollam's claim of error, we affirm the judgment.

## BACKGROUND

McCollam was employed by Royal Alliance Associates, Inc. (Royal Alliance) as a broker and registered representative with the Financial Industry Regulatory Authority (FINRA).  Royal Alliance terminated

1

McCollam's employment in August 2010.  Ten years later, in February 2020, McCollam submitted a request to FINRA for arbitration of his claims against Royal Allegiance for violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq. (RICO)) and FINRA Rule 2010, which requires members to observe high standards of commercial honor. McCollam alleged that during investigations FINRA conducted between 2010 and 2017, Royal Alliance attempted to avoid fines and sanctions by "fabricating" evidence to "frame[]" McCollam and make him the "scapegoat" for Royal Alliance's wrongdoing.  Royal Alliance agreed to submit to FINRA arbitration and asserted a counterclaim for breach of an indemnification contract.

A panel of three independent arbitrators held prehearing conferences in 2020 and 2021 before conducting the arbitration hearing over multiple days in April 2022.  On May 5, they issued a final award, which stated that after considering pleadings, testimony, evidence, and posthearing submissions, the panel made the following "final" rulings:  (1) McCollam's claims were "denied in their entirety"; (2) McCollam was liable to and required to pay Royal Alliance $30,636 in compensatory damages; and (3) all other claims, including requests for attorneys' fees were denied.

On August 11, 2022, McCollam filed a petition in the superior court to vacate the arbitration award on the ground that it "was obtained by corruption, fraud, or other unfair means."  (§ 1286.2, subd. (a)(1) (§ 1286.2(a)(1)).)  As support for his petition, McCollam alleged the following: Royal Alliance terminated McCollam's employment ostensibly because he failed to obtain approval for certain transactions, but in reality McCollam was a "scapegoat for Royal's illicit conduct," and the "fabricated and falsified" evidence that Royal used to justify terminating McCollam was also admitted

2

into evidence at the arbitration, thus resulting in a fraudulent award. On August 16, McCollam filed a motion to vacate the award based on the same legal ground as his petition—that it was procured by fraud. In addition to his pleaded theory that Royal Alliance relied on fabricated evidence, McCollam argued the arbitration was infected by fraud because Royal Alliance elicited expert testimony from a witness named Leslie Ayers, who was not designated as an expert or disclosed prior to the hearing.

Royal Alliance opposed McCollam's petition and motion to vacate. It argued that only extrinsic fraud establishes a valid basis for vacating an arbitration award, and that, in any event, McCollam failed to offer any evidence of fraud. (Citing e.g. *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 825 (*Comerica*).) Royal Alliance also disputed that witness testimony was improperly admitted. In its response to the petition and its opposition to the motion, Royal Alliance requested that the court confirm the arbitration award and "issue an order and judgment effectuating the same."

On September 27, 2023, the superior court held a hearing before signing Royal Alliance's proposed order denying McCollam's petition (the September 27 order). The appellate record does not contain a minute order or transcript from the hearing. The September 27 order states that McCollam's "petition to vacate arbitration award is denied," summarizes authority regarding the limited grounds for judicial review of an arbitration award, and concludes that "petitioner does not highlight a denial of due process or 'extrinsic fraud' that prevented a fair hearing."

## DISCUSSION

### I. Appealability

On November 27, 2023, McCollam filed a notice of appeal from the September 27 order. He contends, with no legal analysis, that the order

3

denying his petition to vacate is an appealable order.  Royal Alliance ignores this threshold jurisdictional issue, but we have an independent obligation to address it.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

"The right to appeal in California is 'entirely statutory and subject to complete legislative control.' " (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 651–652 (*Meinhardt*).)  The jurisdiction of appellate courts "to review superior court orders in arbitration matters is defined by section 1294." (*Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1059–1060.)  That statute states that an appeal may be taken from "(a) An order dismissing or denying a petition to compel arbitration. . . .  [¶] (b) An order dismissing a petition to confirm, correct or vacate an award.  [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered.  [¶] (d) A judgment entered pursuant to this title.  [¶] (e) A special order after final judgment." (§ 1294.)

No provision in section 1294 authorizes an appeal from an order denying a petition or motion to vacate an arbitration award.  Accordingly, courts have held repeatedly that no appeal "will lie from an order denying vacation or correction of an arbitration award." (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454 (*Mid-Wilshire*), italics omitted; see also *Hyatt v. Eckel Valve Co.* (1959) 169 Cal.App.2d 35, 39; *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1060, fn. 1.)  "Such an order may be reviewed upon an appeal from the judgment of confirmation." (*Mid-Wilshire*, at p. 1454.)

McCollam intimates that the September 27 order is appealable because the lower court never issued an order confirming the award.  Denial of a petition to vacate an arbitration award may be construed as an order confirming the award when the record shows there was no separate confirmation proceeding or order.  (*Jordan v. Pacific Auto. Ins. Co.* (1965) 232

4

Cal.App.2d 127, 129 [collecting cases].) This is because "once a petition to confirm, correct, or vacate is filed, the superior court has only four choices: It may (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceedings." (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8 (*Segreto*).) Thus, unless a petition to vacate an award is dismissed, if the court does not vacate or correct the arbitral award, it must confirm the award. (*Ibid*.)

Here, we have no trouble construing the order denying McCollam's petition as an order confirming the award. Although Royal Alliance was not required to petition for confirmation (§§ 1287.6, 1288), after the court denied the motion to vacate, the court had a mandatory duty to confirm the award and enter judgment accordingly. (§§ 1286, 1287.4; *Segreto*, *supra*, 176 Cal.App.4th at pp. 8–9; *Maplebear*, *Inc. v. Busick* (2018) 26 Cal.App.5th 394, 400 [arbitration statute "does not contemplate the denial of a petition to vacate an award, except where the denial is a precursor to a *judgment* confirming the award"].) In the lower court, Royal Alliance appeared to understand this process, as it expressly requested an order confirming the award in its opposition to McCollam's petition. Inexplicably, Royal Alliance's proposed order, which the court signed, does not actually confirm the award.

But even when we construe the order as confirming the arbitration award, the fact remains that judgment was never entered in this case. Under section 1294, if an arbitration award is confirmed, the appeal lies from the judgment entered on the award not from the order confirming it. (§ 1294, subd. (d); *Mid-Wilshire*, *supra*, 7 Cal.App.4th at p. 1454 [dismissing premature appeal filed prior to entry of judgment]; *Cooper v. Lavlely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 10, fn. 3 (*Cooper*) [treating premature notice of appeal as having been filed immediately after

entry of judgment confirming arbitration award]; compare with *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 765 [if order can be construed as *dismissal* of petition to confirm an award it is directly appealable under section 1294].)

McCollam acknowledges the absence of a judgment, albeit indirectly, by requesting that we treat his appeal as a petition for writ of mandate. His one-sentence request provides no reason for granting such relief. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [purported appeal may be treated as petition for writ of mandate only in "unusual circumstances"].) As we have discussed, "an adequate remedy lies in the direct appeal from the judgment." (*Mid-Wilshire*, *supra*, 7 Cal.App.4th at p. 1455.) Although Royal Alliance may have confused matters in the lower court by proposing such a cryptic order, McCollam could have requested entry of judgment once the court denied his motion to vacate. "The interests of clients, counsel, and the courts are best served by maintaining, to the extent possible, bright-line rules which distinguish between appealable and nonappealable orders." (*Mid-Wilshire*, at pp.1455–1456.)

On the other hand, the September 27 order can be construed as sufficiently final so as to be treated as a judgment. (See *Meinhardt*, *supra*, 16 Cal.5th at pp. 654–655 [although jurisdictional deadlines should be clear, once notice of appeal is filed, appellate court may determine whether order is sufficiently final to constitute a judgment].) Moreover, we recognize the waste of resources associated with dismissing the appeal at this juncture, after the record has been prepared and the issues fully briefed. Thus, we will instruct the superior court "to enter judgment of dismissal nunc pro tunc '[t]o promote the orderly administration of justice, and to avoid the useless waste of judicial and litigant time that would result from dismissing the appeal

6

merely to have a judgment formally entered in the trial court and a new appeal filed.' " (*Meinhardt*, at p. 658, fn. 9, quoting *Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204.)

## II. Limitations on Judicial Review of Arbitration Awards

"The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.) When "an arbitrator has issued an award, the decision is ordinarily final and thus 'is not ordinarily reviewable for error by either the trial or appellate courts.' " (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 72.) Limited exceptions to this "general rule" are codified in section 1286.2. (*Ahdout*, at p. 33.) "The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in section 1286.2 applies and that the party was prejudiced by the arbitrator's error." (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1106 (*Liebhaber*).)

In this case, McCollam seeks to vacate the award pursuant to section 1286.2(a)(1), which applies when "[t]he award was procured by corruption, fraud or other undue means." McCollam abandons his pleaded theory that the award is fraudulent because Royal Alliance relied on fabricated evidence. However, he maintains that the arbitrators perpetrated fraud by permitting Royal Alliance to elicit expert evidence from a witness who was not designated prior to the hearing.

## III. McCollam's Petition Was Properly Denied

In an appeal involving a section 1286.2 petition, "[w]e subject the trial court's rulings and the underlying award to different standards of review. To the extent the trial court made findings of fact in confirming the award, we

affirm the findings if they are supported by substantial evidence. [Citation.] To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo." (*Cooper*, *supra*, 230 Cal.App.4th at pp. 11–12.) "We apply a highly deferential standard of review to the award itself, insofar as our inquiry encompasses the arbitrator's resolution of questions of law or fact. Because the finality of arbitration awards is rooted in the parties' agreement to bypass the judicial system, ordinarily ' "[t]he merits of the controversy between the parties are not subject to judicial review." ' " (*Id*. at p. 12.)

## A. Additional Background

McCollam filed a declaration in support of his petition to vacate the arbitration award, to which he attached three documents from the arbitration: his Statement of Claim; the Arbitration Award; and Royal Alliance's Designation of Exhibits and Witnesses. In its designation, Royal Alliance stated it expected to call four witnesses, which it named, with this caveat: "Royal Alliance reserves the right to call other witnesses in rebuttal to those called by Claimant, or as may be needed depending on the order of proof."

McCollam also lodged with the court excerpts from an audio recording of the lengthy arbitration hearing, which provide some information about the issue on appeal. On April 20, 2022, during the afternoon session of the arbitration hearing, McCollam continued his examination of Royal Alliance's former employee and Chief Compliance Officer. During the examination, McCollam's counsel asked questions about data recorded on the company's computerized transaction review system, referred to as the TRS system, in an apparent effort to identify discrepancies between the TRS data and other records of McCollam's trades during the relevant time. The witness was not

8

an "IT person," the system changed over the years, and she had limited personal knowledge about how it operated.

During an extended lull in McCollam's examination, Royal Alliance's counsel notified the arbitrators and opposing counsel that, in light of the line of testimony McCollam had been pursuing, Royal Alliance had reached out to its home office and located a person familiar with the TRS system. Counsel stated that Royal Alliance was prepared to call this individual, Leslie Ayers, as a witness, either during McCollam's case, or as a rebuttal witness, and that she could appear as early as the following week. One member of the arbitration panel responded that, "anything you can bring into this courtroom that enlightens the panel more than the panel is being enlightened now would be appreciated." This arbitrator expressed confusion on behalf of the panel about testimony that had been presented and its relevance, and frustration that the parties had yet to present any evidence to support their allegations.

McCollam's counsel responded positively to Royal Alliance's request to produce Ayers, and stated his preference that she testify during McCollam's case. Royal Alliance made a record of the fact that Ayers was extremely busy, with a packed schedule, but agreed to bring her in. After a brief digression, McCollam's counsel stated, "In answer to your question about Leslie Ayers, we would like her here at the earliest possible opportunity," and would "put her on immediately." At that point, the arbitrator reiterated that the panel was encouraging counsel to "bring people in who can enlighten us," as the panel had been sitting there "trying to figure out what the hell is going on."

The following week, on April 26, the same member of the arbitration panel stated that Leslie Ayers was outside waiting to testify. This arbitrator

noted that the panel had been informed by counsel that there may or may not have been an agreement permitting this witness to testify, that she apparently had not been previously designated, and that she was being brought in to offset testimony elicited the previous week regarding transaction review supervision. The arbitrator ruled that Ayers would be permitted to testify. In response, McCollam's counsel asked for "clarification," and questioned whether other undisclosed witnesses would be testifying, then proceeded to argue with opposing counsel about whether McCollam had disclosed a new theory the previous week that would warrant calling Ayers as a witness. The arbitrator, annoyed at the bickering, silenced the debate by advising the parties that the panel could strike Ayers's testimony, if need be, but he would allow the witness to testify "out of courtesy to her."

Ayers then testified about specific transactions McCollam had entered into the TRS system, some containing erroneous information and others which were posted improperly to more than one account. McCollam lodged no objections during Ayers's direct testimony. His counsel conducted extensive cross-examination, which was not limited by the scope of Ayers's direct testimony. For example, McCollam elicited testimony that once entries were made on TRS they could not be removed, so if documentation pertaining to the system data was altered, that would be very concerning. After Ayers's testimony was completed, there was a break in the proceeding. We have been given no reason to believe that Ayers or her testimony were ever discussed again during the arbitration hearing.

The final session of the arbitration hearing was held on April 29, 2022. On May 5, the panel issued the arbitration award, which consisted of a six-page ruling prefaced with this explanatory note: "Awards are rendered by

10

independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award." The award incorporates detailed summaries of the extensive procedural history of the matter. As to the merits, McCollam's claims were denied, and Royal Alliance was awarded compensatory damages on its indemnity claim. The award does not contain any factual or legal findings aside from these rulings.

**B. Analysis**

McCollam contends the arbitration award must be vacated because the arbitrators engaged in fraud by permitting Ayers to testify as an undesignated expert witness. This claim is premised on a misconstruction of the facts and is wholly unsupported by legal authority.

To begin with, McCollam mischaracterizes Ayers as an expert witness. The record shows that she was an employee of Royal Alliance's parent company with personal knowledge about the operation of a computer system that was relevant to the parties' dispute. In his reply brief, McCollam appears to concede that Ayers had relevant personal knowledge, but argues she was not a percipient witness because her testimony was not based on personal observations. We are not persuaded by this logic. Ayers did not have to observe McCollam enter trades into the computer to qualify as a percipient witness, as she clearly had relevant percipient knowledge about the TRS system that McCollam put at issue during the arbitration.

McCollam also mischaracterizes the arbitrator's ruling in at least two material ways. First, he contends that Ayers was permitted to testify over his objections. Second, he posits that the only reason the arbitrator permitted Ayers to testify was to avoid being discourteous. The record shows the arbitrators were confused about the relevancy of the TRS system and that

11

everyone, including McCollam, agreed that calling Ayers could clarify matters. Later, after Ayers travelled to the hearing, McCollam's counsel made an offhand comment about her being a surprise witness, but he did not object to her direct testimony, and he completed a thorough cross-examination. Moreover, the arbitrator admitted Ayers's testimony subject to a motion to strike, which McCollam never made.

Turning to the merits, McCollam's legal analysis is seriously flawed. His core argument is that the arbitrators abused their discretion by allowing Ayers to testify because Royal Alliance did not make a showing of good cause for failing to disclose Ayers as a witness at least 20 days before the first session of the arbitration hearing. Contending that a finding of good cause was required, McCollam refers this court to Rule 13514 of the FINRA Code of Arbitration Procedure for Industry Disputes (Rule 13514), which he paraphrases in his appellate brief. He does not show or even contend that he invoked Rule 13514 during the arbitration.[1]

Even if we accept McCollam's argument at face value, it fails. For one thing, he ignores evidence that would support an implied finding of good cause for calling Ayers. More to our point, he cites no authority authorizing judicial review of an arbitrator's admittedly discretionary evidentiary ruling. "An 'expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the

---

[1] McCollam has not requested judicial notice of Rule 13514. (See *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 719, fn. 4 [commercial arbitration rules may be judicially noticed in appropriate cases].) Of course, we may take judicial notice on our "own volition." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.) We decline to do so here absent evidence that McCollam invoked Rule 13514 during the arbitration. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 573, fn. 4 ["only relevant evidence is subject to judicial notice"].)

12

beginning, of the dispute.' [Citation.] As such, 'arbitration awards are subject to an extremely narrow judicial review. [Courts] cannot review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting an arbitrator's award. . . . "[E]very reasonable intendment must be indulged in favor of the award." ' " (*Starr v. Mayhew* (2022) 83 Cal.App.5th 842, 850.)

McCollam takes the position that the decision to admit Ayers's testimony is subject to review under section 1286.2(a)(1) because it constituted fraud. This view is without factual or legal support. Contending an arbitrator erred by admitting evidence is really just another way of saying that the arbitrator made an error of law, which is not the type of error that courts may review. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11.) McCollam cannot circumvent this principle by filing his petition under section 1286.2(a)(1).

Section 1286.2(a)(1) "states that an award may be vacated if the award is secured by corruption, fraud or other undue means. Fraud, as that term is used in section 1286.2, subdivision (a)(1), is that perpetrated by the arbitrator or a party. Only extrinsic fraud which denies a party a fair hearing may serve as a basis for vacating an award." (*Comerica, supra,* 208 Cal.App.4th at p. 825 [collecting cases].) "Extrinsic fraud occurs ' "when a party is deprived of his opportunity to present his claim or defense to the court, where he was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding." ' " (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 833.) Section 1286.2(a)(1) also applies to awards procured by undue means, a term that is not defined in the statute but has been elucidated in case law. "For example, '[i]mproper ex parte communications between an arbitrator and a litigant can serve as a basis for

13

a corruption, fraud or other undue means finding.' " (*Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 739.) However, if " ' "the Legislature intended to permit an arbitration award to be vacated whenever the prevailing party engages in tactics that might in any way seem unfair, it would not have used the specific examples of fraud and corruption to describe the type of 'undue means' it had in mind." ' " (*Ibid.*) Thus the conduct must be such that it prevented a fair adversarial hearing by either rendering the aggrieved party ignorant of the proceeding or in some other way fraudulently preventing them from making their case. (*Id.* at pp. 739–740.)

In this case, McCollam does not show or even contend he was prevented from participating in the arbitration or from presenting his case. Instead, his complaint is that the arbitrators granted him "only four court days to prepare for [Ayers] testimony instead of the procedurally required twenty days." Even if this were true, McCollam essentially concedes that he did have notice Ayers would be called; indeed the record so shows. Equally important, there is no dispute that McCollam had an unqualified opportunity to examine Ayers. Indeed, he does not articulate any theory of prejudice that is tied to the alleged lack of sufficient notice. Instead, he argues that Ayers's testimony was prejudicial because it was damaging, which is not a ground for vacating the award.

Finally, McCollam relies on cases recognizing a basic right to a fundamentally fair arbitration hearing. (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1143; *Liebhaber, supra,* 2 Cal.App.5th at p. 1108.) Neither case involved an award allegedly procured by fraud, and both are factually inapposite. The *Kaplan* court found that a $30 million arbitration award should have been vacated under section 1286.2, subdivision (a)(4) because the arbitrator exceeded his authority by awarding punitive damages

14

without sufficient prior notice that punitive damages were being sought, in violation of the arbitration agreement and "fundamental procedural fairness principles." (*Kaplan*, at pp. 1129–1130.)  Here, McCollam does not contend the arbitrators exceeded their authority but that they abused their discretion. And the record shows he did have notice and the opportunity to fully cross-examine Ayers.  *Liebhaber* affirmed a judgment vacating an arbitration award on the ground that the rights of the petitioner were substantially prejudiced "by the refusal of the arbitrators to hear evidence material to the controversy." (§ 1286.2, subd. (a)(5); see *Liebhaber*, at pp. 1107–1111.)  If the arbitrators in this case had barred Ayers from testifying, *Liebhaber* might be relevant.  Here, however, the arbitrators did not refuse to hear material evidence; they elected to hear the testimony, subject to a later motion to strike that was never made.

## DISPOSITION

The trial court is directed to enter a judgment of dismissal nunc pro tunc as of the date of the order denying the petition to vacate the arbitration award.  The judgment is affirmed.  Costs are awarded to Royal Alliance.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.


*McCollam v. Royal Alliance Associates, Inc.* (A169192)

15